Commonwealth *v.* Henderson, Appellant.

560

Argued March 26, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Benjamin L. Long,* with him *James J. McGinnis* and *Thomas B. Moreland Porter, Jr.,* for appellant.

*Gilbert P. High,* with him *High, Swartz, Flynn & Roberts,* for appellee.

OPINION BY DITHRICH, J., April 15, 1952:

Appellant contends that the court below erred in entering upon him an order for support of his wife "without first finding that the defendant had neglected to maintain" her. He submits "that the primary question in the instant case is not *what* sum the court should enter as an order, but *whether* it has power under the evidence to enter an order in any sum."

The proceeding having been instituted by the issuance of an information under §733 of the Act of June 24, 1939, P. L. 872, 18 PS §4733, and counsel for the parties having stipulated of record that "The question to be determined by the Court is whether the defendant . . . has neglected 'to maintain his wife' . . ."—the question of whether he had separated himself from her "without reasonable cause" not being at issue—appel-

lant argues that the trial court must find as a fact that the defendant has neglected to maintain his wife before it can enter an order on him for her support.

In the words of KNIGHT, P.J., for the court en banc: "We are not aware that in cases of this kind the hearing judge or the Court en banc is required to make findings of fact." Nor are we aware that it is error for the court to "substitute its judgment for that of the husband" as to what constitutes neglect "to maintain", as provided by The Penal Code. Appellant advances the bizarre thesis that "the learned court below had no power . . . to substitute its judgment for that of the husband . . . as the basis of an order of support and erred when it did so."

Section 733 of The Penal Code, supra, provides in part that "The said court [of quarter sessions], after hearing in a summary proceeding, may order the person against whom complaint has been made, being of sufficient ability, to pay such sum as *said court shall think reasonable and proper* for the comfortable support and maintenance of the said wife . . ." (Emphasis added.)

As stated in *Commonwealth v. George,* 358 Pa. 118, 122, 123, 56 A. 2d 228: "Section 733 of the Criminal Code, supra, is to be distinguished from Section 731 . . . in that the purpose of the latter is punishment for failure to support a wife or children, whereas the former, with which we are here concerned, was not to punish the husband, but to secure reasonable allowance for support of the wife and family consonant with the husband's property, income, earning capacity, and the family's condition in life: Jones v. Jones, 348 Pa. 411, 415-416, 35 A. 2d 270; Commonwealth ex rel. Barnes v. Barnes, 151 Pa. Superior Ct. 202, 30 A. 2d 437; Commonwealth ex rel. Martocello v. Martocello, 148 Pa. Superior Ct. 40, 46, 24 A. 2d 712; Commonwealth ex rel.

Binney v. Binney, 146 Pa. Superior Ct. 374, 379, 22 A. 2d 598. The instant case concerns only Section 733 and it is the function of appellate courts to determine whether the evidence adduced establishes the necessary. prerequisite required by the statute for the entry of an order of support—neglect to maintain." The record in the instant case does establish such neglect and the order must be affirmed.

The parties were married in May, 1941, and separated in April of 1951. There are no children. Although they own a home by entireties in Germantown, they are presently residing in separate apartments—the wife in Montgomery County; the husband in Philadelphia. Their former residence is unoccupied.

Beginning in 1944, appellant has been in partnership with his father in an old, well-established and profitable undertaking business, under the name of Kirk & Nice, in Germantown. For the year 1950 appellant and his wife filed a joint income tax return showing income of $43,260.88 and a net income after taxes of $29,275.05. Against this amount there was charged the sum of $1,000 per month which was paid by the partnership to retire an obligation to the Pennsylvania Company for Banking and Trusts. This obligation would have been liquidated by the end of the year 1951.

All of appellant's formal attire for funerals, the cost of operating both his own and his wife's automobile, and his town and country club dues, charitable contributions, etc., were charged as a business expense against the partnership and not against his personal account. He admits total withdrawals during the 12-month period beginning July 1, 1950, of $32,510.78, of which $13,155 was in cash, $16,338.17 in payment of income tax, and the balance of $3,017.61 "in the form of checks in payment of doctors, club dues, insurance

premiums, contributions and other miscellaneous expenses." In the three months between the separation and the trial appellant made the last three payments on the automobile which he had purchased for his wife, did nothing to limit or curtail her purchase of necessities—he never did purchase her clothing—and voluntarily contributed the sum of $50 per week as a further provision for her maintenance. He contended in the court below, and argues here, that that was all he was required to do, but the learnéd President Judge of the court below said:

"Turning now to the defendant's contentions it will be noted that the bills paid by the defendant since the separation were in nearly every case contracted before the separation. The amounts paid by the defendant on account of the carrying charges on the joint property can hardly be termed as maintenance of the wife for she is not living in the house and there is no obligation on the part of the defendant to pay these charges except his own contractual commitments.

"It may be true that the defendant has not interfered with the credit of his wife or sought to prevent her from charging things to him but we do not think the law requires that a wife living separate and apart from her estranged husband should be compelled to purchase all of her necessaries by having them charged to the husband.

"As a practical matter it is our observation that arrangements like this do not work out. Constant disputes arise as to what are necessaries and what should be paid by the husband.

"It is far better for the wife to know just how much she will have to live on and for the defendant to know just how much he will have to pay."

After a full and complete review of the evidence Judge KNIGHT reached the conclusion that $100 per

564

week would be "a just and reasonable amount for the defendant to pay towards the support of his wife." The relatrix filed a motion for a new trial on the ground that the order was inadequate, and after argument before the court en banc the court, rather than grant a new trial which would necessitate further hearing, elected to treat the motion as an exception to the order of the hearing judge. The exception was sustained, the order was revoked and a new order entered in the sum of $125 per week. Defendant-appellant then filed exceptions to the order of the court en banc, an unnecessary step, as an appeal could have been taken to this Court directly from the order since, again quoting the learned President Judge of the court below, "It represents the final judgment of [that] court on the case."

We reiterate what we have repeatedly said, viz., "our function on appeal is merely to determine whether the lower court is chargeable with an abuse of discretion": *Commonwealth ex rel. Geiger v. Geiger,* 167 Pa. Superior Ct. 26, 27, 74 A. 2d 739; *Commonwealth ex rel. Barker v. Barker,* 160 Pa. Superior Ct. 263, 50 A. 2d 739. While the order is liberal, it is not in our opinion excessive and we find no abuse of discretion.

Order affirmed.